[No. E050191. Fourth Dist., Div. Two. May 5, 2011.]

VICTOR GONZALEZ, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS AND REHABILITATION et al.,
Defendants and Respondents.

## COUNSEL

Faunce, Singer & Oatman, Edward L. Faunce and Larry J. Roberts for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Alicia M.B. Fowler, Assistant Attorney General, Elizabeth Hong and Ernesto J. Fong, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**McKINSTER, Acting P. J.**—Victor Gonzalez appeals an order denying a petition for a writ of mandate directing California's Department of Corrections and Rehabilitation (the Department) to file an application for retirement disability benefits on his behalf after he became disabled for his functions as a correctional officer as a result of an on-the-job injury. The trial court held that the Department had no such obligation, but could instead medically demote Gonzalez to an available position for which he was qualified and not disabled, even though it was an entry-level clerical position which paid much less than Gonzalez's position as a correctional officer. The court held that the Department had reasonably determined that it could not accommodate Gonzalez's disability in his position as a correctional officer.

The issue addressed in this appeal is a perceived conflict between sections 19253.5 and 21153 of the Government Code.[1] However, as we will explain, there is no conflict between the two. Consequently, we will affirm the judgment.

### PROCEDURAL HISTORY

Gonzalez filed his petition for writ of mandate on November 10, 2008. After briefing and oral argument, the trial court took the matter under submission and issued its statement of decision, which is summarized below.

Judgment was entered on November 2, 2009. Gonzalez filed a motion for new trial, which was denied on January 25, 2010. Gonzalez filed a timely notice of appeal.

### FACTS

In reviewing denial of a petition for writ of mandate, we accept the trial court's factual findings if those findings are supported by substantial evidence. (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified*

[1] All statutory citations refer to the Government Code.

*School Dist.* (2002) 98 Cal.App.4th 369, 375 [119 Cal.Rptr.2d 642].) In its statement of decision, the trial court found the following facts, all of which are supported by substantial evidence.

Correctional Officer Victor Gonzalez injured his knee on March 14, 2007, while at work. On March 17, 2008, his treating physician, Dr. Wall, reported that Gonzalez's condition was permanent and stationary and that Gonzalez was unable to return to work as a correctional officer because he could not perform normal activities required in that position, including running, "take downs," kneeling, and squatting or standing for long periods of time.

On April 2, 2008, after receiving Dr. Wall's report, the Department held a meeting with Gonzalez to discuss reasonable accommodations which could be made. The options included medical demotion to an office assistant position for which Gonzalez qualified or disability retirement, for which Gonzalez would have to apply on his own.

On April 4, 2008, the Department sent Gonzalez a letter explaining his options. On April 11, 2008, Gonzalez met with Cynthia Hudson, the return to work coordinator for the California Institution for Men (CIM), where Gonzalez was employed. She explained that his correctional officer position could not be modified to accommodate his work restrictions and that the Department would not apply for disability retirement on his behalf because he was qualified for an available position as an office assistant.

Gonzalez's attorney responded with a letter in which he asserted that the Department had a mandatory duty to apply for disability retirement on Gonzalez's behalf.

On June 24, 2008, Dr. Wall submitted a supplemental report in which he stated that Gonzalez could no longer perform essential job functions as a correctional officer because his physical limitations precluded prolonged walking and standing, prolonged sitting without a break, repetitive squatting, repetitive kneeling or crawling, repetitive climbing of stairs or ladders, working effectively in altercations, working on soft or uneven surfaces and repetitive twisting.

The Department again sent Gonzalez the April 4, 2008, letter stating his options and requesting a response. The letter was sent on June 10, 2008, and again on February 13, 2009. In February 2009, in mitigation of damages, Gonzalez applied on his own for disability retirement.

## LEGAL ANALYSIS

### THE TRIAL COURT CORRECTLY HELD THAT THE DEPARTMENT WAS NOT REQUIRED TO APPLY FOR DISABILITY RETIREMENT ON BEHALF OF GONZALEZ

Gonzalez contends that the trial court erred in finding that the Department had the authority to medically demote him to an available position for which he was qualified and not disabled rather than to file for disability retirement on his behalf, pursuant to section 21153.[2] The Department, however, contends that because Gonzalez was qualified for a lower-paying position within the Department and was capable of carrying out the functions of that position, Gonzalez was required to accept medical demotion or to file for disability retirement himself. The Department bases its position on section 19253.5, subdivision (c).[3]

---

[2] Section 21153 provides, in pertinent part, "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled, unless the member waives the right to retire for disability . . . ."

[3] Section 19253.5 provides, in pertinent part,

"(a) In accordance with board rule, the appointing power [(i.e., the Department)] may require an employee to submit to a medical examination by a physician or physicians designated by the appointing power to evaluate the capacity of the employee to perform the work of his or her position. [¶] . . . [¶]

"(c) When the appointing power, after considering the conclusions of the medical examination and other pertinent information, *concludes that the employee is unable to perform the work of his or her present position, but is able to perform the work of another position including one of less than full time, the appointing power may demote or transfer the employee to such a position.* [¶] . . . [¶]

"(d) When the appointing power after considering the conclusions of the medical examination provided for by this section or medical reports from the employee's physician, and other pertinent information, concludes that the employee is unable to perform the work of his or her present position, or any other position in the agency, and the employee is not eligible or waives the right to retire for disability and elects to withdraw his or her retirement contributions or to permit his or her contributions to remain in the retirement fund with rights to service retirement, the appointing power may terminate the appointment of the employee. [¶] . . . [¶]

"(i)(1) If the appointing power, after considering the conclusions of the medical examination provided for by this section or medical reports from the employee's physician and other pertinent information, concludes that the employee is unable to perform the work of his or her present position or any other position in the agency and the employee is eligible and does not waive the right to retire for disability, the appointing power shall file an application for disability retirement on the employee's behalf. The appointing power shall give the employee 15 days written notice of its intention to file such an application and a reasonable opportunity to respond to the appointing power prior to the appointing power's filing of the application. However, the appointing power's decision to file the application is final and is not appealable to the State Personnel Board.

"(2) Notwithstanding Section 21153, upon filing the application for disability retirement, the appointing power may remove the employee from the job and place the employee on

"Ordinarily, a trial court's findings and judgment on a petition for writ of mandate are upheld if supported by substantial evidence. [Citation.] However, the trial court's construction of a statute is purely a question of law and is subject to de novo review on appeal." (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist., supra*, 98 Cal.App.4th at p. 375.) Here, we are concerned solely with the trial court's interpretation of sections 19253.5 and 21153. Accordingly, our review is de novo.

We begin with Gonzalez's basic premise, that section 21153 required the Department to apply for disability retirement on his behalf.[4] Gonzalez contends that because he was disabled for his usual job functions and the Department could not accommodate his physical limitations while maintaining his employment as a correctional officer, section 21153 mandated that the Department apply for disability retirement on his behalf. He contends that this interpretation is mandated by the Legislature's use of the phrase "[n]otwithstanding any other provision of law" in section 21153. He contends that this phrase demonstrates that the Legislature intended section 21153 to prevail over any contrary provision in section 19253.5.

■ We disagree with Gonzalez's analysis. We apply well-established principles of statutory construction: In examining statutes, " '[c]ourts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted . . . [.]" [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] " 'The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " [Citations.] "Moreover, the various parts of a statutory enactment

---

involuntary leave status. The employee may use any accrued leave eligible during the period of the involuntary leave. If the employee's leave credits and programs are exhausted or if they do not provide benefits at least equal to the estimated retirement allowance, the appointing power shall pay the employee an additional temporary disability allowance so that the employee receives payment equal to the retirement allowance. The appointing power shall continue to make all employer contributions to the employee's health plans during the period of the involuntary leave." (Italics added.)

[4] Because the record shows that Gonzalez applied for disability retirement on his own, it may appear that any duty the Department had to do so for him is obviated. However, if the Department's obligation to apply on Gonzalez's behalf had arisen, Gonzalez would have been entitled to continuing disability payment while the application was pending, and the Department would have been obligated to continue making contributions to Gonzalez's health plan. (§ 19253.5, subd. (i)(2).) Consequently, the distinction is material.

must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' " (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist., supra,* 98 Cal.App.4th at pp. 375–376, italics omitted.)

The predecessor of section 21153, the identically worded former section 21023.5, was enacted in 1970, as part of legislation which also amended section 19253.5. (Stats. 1970, ch. 1447, § 2, p. 2820.) As amended by that legislation, subdivisions (a) through (h) of former section 19253.5 were identical to the current version, with the exception of references to other statutes which have since been renumbered. Consequently, it is clear that the Legislature intended that section 19253.5 and former section 21023.5, now section 21153, operate together.

The legislative history of subdivision (i) of section 19253.5, which was enacted in 1999 (Stats. 1999, ch. 310, § 11, p. 2421), bears this out as well. The Senate's bill analysis of the proposed legislation stated as follows: "Existing law prohibits a state agency from medically terminating an employee who is vested in the Public Employees' Retirement System (PERS) unless the employee waives the right to retire for disability. (Government Code Sections 19253.5(d) and 21153[.]) In order to separate such employees, the state employer is required to apply for involuntary disability retirement on the employee's behalf. (Government Code Section 21153[.]) PERS can take over a year to process the application for disability retirement. While most employees are covered by some form of paid leave during the application process, their leave credits are sometimes exhausted, which leaves the employee without either income or a retirement allowance while the application is pending. [¶] This bill would require a state employer, if the employee cannot perform in his or her position or any other position in the agency; to apply for disability benefits on the employee's behalf. [¶] This bill would also require the employer to pay a temporary retirement disability allowance and continue to contribute to employee health plans when the employer files an application for involuntary disability retirement and the employee's leave credits are exhausted. The employer will be reimbursed for the temporary allowance by PERS from the back retirement benefits if the application is granted. If the application is not granted, the employer may deduct the amount of the allowance from the back salary due the employee." (Sen. Com. on Public Employment and Retirement, Analysis of Sen. Bill No. 1073 (1999–2000 Reg. Sess.) Apr. 12, 1999, § 11, pp. 4–5.)

In any event, the two statutes do not conflict. Section 21153 prohibits medical disability termination of an employee who is eligible for disability retirement unless the employer applies for disability retirement on the employee's behalf or the employee chooses to waive the right to disability retirement.

(See *Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1305 [79 Cal.Rptr.2d 749].) Section 19253.5, subdivision (d) permits termination of a medically disabled employee who is *not* eligible for disability retirement or who chooses to waive his or her right to retire for disability. Section 19253.5, subdivision (i)(1) reiterates that if the agency determines that an employee who is eligible for disability retirement is medically unable to perform his or her current job functions or those of any other position in the agency, the agency must apply for disability retirement on the employee's behalf. Subdivision (i)(2) provides that the employee may be placed on involuntary leave (but not terminated) while the application for disability retirement is pending, subject to the requirement that the agency must insure that the employee receives payment equal to the retirement allowance during the application process and must continue to make all employer contributions to the employee's health plan.

Similarly, there is no conflict between section 21153 and section 19253.5, subdivision (c), which permits medical demotion or transfer within the agency when an employee is medically unable to perform the functions of his or her present position but is able and qualified to perform the functions of another position, even if it is less than full time or otherwise results in lower pay. Section 21153 prohibits only "separation" of a disabled employee, i.e., termination; it does not prohibit demotion or transfer.

■ From all of the foregoing, we conclude that, pursuant to sections 21153 and 19253.5, a state agency's duty to apply for disability retirement on behalf of a civil service employee[5] arises only when the agency determines that the employee is medically unable to perform his or her usual job functions or the functions of any other available position within the agency and the employee is eligible for disability retirement and chooses not to waive the right to disability retirement.[6]

Gonzalez relies on *Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453 [44 Cal.Rptr.3d 394] (Fourth Dist., Div. Two) (*Lazan*), in which this court held that a county agency's duty to apply for disability retirement on behalf of an employee arises when the agency believes that the employee is

---

[5] As we discuss immediately below, section 19253.5 applies only to civil service employees, such as Gonzalez.

[6] A valid determination that the employee is disabled presupposes compliance with the requirement, pursuant to the California Fair Employment and Housing Act (FEHA) (§ 12900 et seq.), that the employer make reasonable efforts to accommodate the employee's disability. (§ 12940, subd. (m).) (But see *Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 972–977 [2 Cal.Rptr.3d 329] [FEHA applies to civil service employees to the extent that its requirements can be harmonized with principles applicable to civil service laws].) Here, the trial court found that the Department made such efforts but that Gonzalez refused to cooperate. That finding is supported by substantial evidence, and Gonzalez does not contend otherwise.

disabled within the meaning of section 21156. (*Lazan*, at pp. 460–464.) Gonzalez asserts that sections 21153 and 21156,[7] as interpreted by *Lazan*, prohibit a state agency from medically demoting an employee, pursuant to section 19253.5, subdivision (c), in lieu of applying for disability retirement on behalf of the employee. He contends that unless the employer can accommodate the employee's disability by retaining him or her in the current position or transfer the employee to a substantially similar position, the employer's only option is to apply for disability retirement on the employee's behalf.

■ *Lazan* is inapposite because section 19253.5 does not apply to the petitioner in that case, who was a deputy sheriff employed by the County of Riverside. (*Lazan, supra*, 140 Cal.App.4th at p. 456.) Section 21153 is part of the "Retirement from Employment" chapter of the PERS legislation. (§ 20000 et seq.) PERS applies not only to state employees but also to "local safety members," consisting of local police officers, local sheriffs, firefighters, safety officers, county peace officers and school safety officers employed by local public agencies which have by contract been included in PERS. (§ 20420; see *Haywood v. American River Fire Protection Dist., supra*, 67 Cal.App.4th at p. 1297.) Section 19253.5, in contrast, is part of the State Civil Service Act. (§ 18500 et seq.) A correctional officer employed by the Department is a civil service employee. (Cal. Const., art. VII, §§ 1, 4.) A county deputy sheriff is not. (*Ibid.*) Consequently, *Lazan*'s interpretation of section 21153 as it applies to a county deputy sheriff has no bearing on the application of that statute with regard to a state civil service employee.[8]

---

[7] Section 21156 pertains to the Public Employees' Retirement System (PERS) board's decision whether to grant an application for disability retirement. It provides, in pertinent part,

"(a)(1) If the medical examination and other available information show to the satisfaction of the board, or in case of a local safety member, other than a school safety member, the governing body of the contracting agency employing the member, that the member in the state service is incapacitated physically or mentally for the performance of his or her duties and is eligible to retire for disability, the board shall immediately retire him or her for disability, unless the member is qualified to be retired for service and applies therefor prior to the effective date of his or her retirement for disability or within 30 days after the member is notified of his or her eligibility for retirement on account of disability, in which event the board shall retire the member for service.

"(2) In determining whether a member is eligible to retire for disability, the board or governing body of the contracting agency shall make a determination on the basis of competent medical opinion and shall not use disability retirement as a substitute for the disciplinary process."

[8] Gonzalez's request for judicial notice, filed September 7, 2010, is denied for reasons stated in the opposition to the motion, i.e., the materials as to which Gonzalez seeks judicial notice are not relevant to the issues raised in the appeal. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

Miller, J., and Codrington, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 17, 2011, S193986.