[No. G046262. Fourth Dist., Div. Three. Jan. 11, 2013.]

VALERIE MOONEY, Plaintiff and Appellant, v.
COUNTY OF ORANGE, Defendant and Respondent.

866

COUNSEL

Donna Bader for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck, William L. Haluck and Matthew B. Golper for Defendant and Respondent.

OPINION

FYBEL, J.—

## INTRODUCTION

Plaintiff Valerie Mooney appeals from a judgment entered after the trial court granted the motion of her former employer, defendant County of

Orange (the County), for summary adjudication on her causes of action for violations of Government Code sections 31725 and 31721, subdivision (a). (All further statutory references are to the Government Code unless otherwise specified.) Mooney contends the trial court erroneously interpreted these sections in concluding neither applied to the County.

We affirm. Mooney's claims fail as a matter of law because the undisputed facts show that Mooney was neither "dismissed" by the County because of a disability, within the meaning of section 31725, nor "separate[d]" from employment by the County, within the meaning of section 31721, subdivision (a). Both of these statutes refer to duties of an employer which are triggered by its actions. We hold that in the context of these statutes, "dismissed" and "separate[d]" share the same meaning.

## UNDISPUTED FACTS

In November 1990, Mooney was hired by the County as a deputy probation counselor. On June 22, 2004, while pushing a linen cart, Mooney suffered a lumbar disc injury and took a two-month medical leave. Shortly after she returned from medical leave, on September 20, Mooney "sustained a second aggravating injury" and took another two-month medical leave.

Beginning in late November 2004, Mooney worked without restrictions. From March 12, 2005, through May 25, 2006, she was "placed on a restriction of working no more than 40 hours per week."

On May 30, 2006, Mooney was informed that the County was no longer able to accommodate her work restriction, and, consequently, she was not cleared to work. On June 16, Mooney requested "an immediate ADA [(Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.))] meeting." An interactive meeting was held on June 22. In July, Mooney was "given a job assignment performing clerical duties."

In October 2006, Mooney was examined by Arthur Leupold, M.D., who was "the Workers' Compensation Orthopaedic Agreed Medical Examiner." On January 3, 2007, the County received notice of the following permanent work restrictions for Mooney: "Based on an ME report of Dr. Leupold dated 10/24/06, Ms. Mooney is: precluded from heavy lifting and repeated bending or stooping." On January 4, the County's human resources administrative manager told Mooney that the County could not accommodate Mooney's permanent work restrictions within her classification of deputy juvenile correctional officer II. Mooney was told she was not to return to work until a final decision was made by "Executive Management regarding accommodation of her permanent work restrictions."

Thereafter, Mooney "periodically attended ADA meetings" with the County's administrative manager, Sheetal Chavis. The County engaged in an interactive meeting with Mooney on February 5, 2007. On February 22, a request for assistance was sent out to the "HR Leadership Forum" on behalf of Mooney, which enabled all of the County's agencies to view her qualifications and compare them with the qualifications required for open positions. One of the County's departments expressed interest in Mooney, but other candidates were selected for its open positions.

On May 1, 2007, Mooney filed an application for disability retirement with the Orange County Employees Retirement System (OCERS), wherein she alleged that her disability prevented her from meeting the minimum physical qualification standard for her classification of deputy juvenile correctional officer II. Mooney stated in a declaration that she applied to OCERS for disability retirement "[d]ue to [her] need for income." The County did not volunteer to assist her in that effort. Mooney asked Chavis for assistance but was told the County "would not apply and it would be a 'long process.' " During the disability retirement application process, Mooney continued to engage in the interactive process with Chavis, and the County continued to seek a reasonable accommodation for Mooney. An interactive meeting was held on September 14, 2007, at which time Mooney stated she would not be willing to take any position unless it allowed her to keep her sworn status and safety retirement benefits. At each subsequent interactive meeting with the County, Mooney reiterated her unwillingness to accept a position that would not allow her to keep her sworn status and safety retirement benefits.

At an unspecified point in time, Mooney stated she repeatedly told Chavis that she was "ready and willing to do scheduling, clerical, and other assignments of the type [she] had previously been performing in the Probation Department. [She] also told Ms. Chavis that [she] was capable of meeting clients and conducting interviews, writing reports, and data entry." According to Mooney, Chavis did not provide her with "answers, and periodically inquired as to the status of [her] claim for disability retirement benefits."

In February 2008, Mooney was advised by OCERS that her application for disability retirement was denied for "insufficient evidence of permanent incapacity." OCERS's physician stated Mooney was able to do her job, "but should avoid heavy lifting as a 'prophylactic' measure." Mooney appealed the denial of the application; she did not receive assistance from the County in appealing that denial, although Chavis asked her about the status of her appeal.

Interactive meetings between the County and Mooney occurred on April 7, 2008, November 5, 2008, and August 25, 2009. OCERS denied Mooney's

appeal on December 1, 2009. An interactive meeting was held on December 18, 2009. Chavis told Mooney that she had been advised by the County's counsel that "it was not economical to accommodate [Mooney]." Chavis acknowledged that, in the past, employees in similar circumstances had been accommodated.

On January 8, 2010, the County offered Mooney the position of office assistant at the North County Field Services Office, which paid $17.90 an hour. The position was "within [her] work restrictions." Mooney rejected the position "because the pay and benefits were substantially less." (The pay offered was $10 an hour "below [her] pay level.") In a letter dated January 26, 2010, Mooney explained she rejected the position because it did not allow her to keep her original title or same rate of pay.

An interactive meeting was held on April 30, 2010. On June 23, 2010, a request for assistance was sent to the HR Leadership Forum on behalf of Mooney, again enabling all of the County's agencies to view her qualifications and compare them with the qualifications required for any of their openings.

On August 2, 2010, Mooney was offered a "GTS Technician Staff Assistant" position, which "did not pay as much, and did not provide safety retirement benefits." She remained on disability leave as of June 9, 2011, the date she signed her declaration filed in opposition to the County's motion for summary adjudication.

Mooney has never been dismissed or terminated from employment with the County. She is physically unable to perform the duties of a deputy juvenile correctional officer II because of her permanent work restrictions. The County continued to explore possible positions for Mooney's reassignment which would meet her qualifications while accommodating her permanent work restrictions. Since 2004, Mooney has never looked for another job, and has never filed for or received unemployment insurance benefits.

## PROCEDURAL BACKGROUND

In April 2010, Mooney filed a lawsuit against the County. In February 2011, Mooney filed a first amended complaint against the County, containing claims for disability discrimination, failure to provide a reasonable accommodation, failure to engage in the interactive process, violation of section 31721, subdivision (a), violation of section 31725, and reinstatement.

The County filed a motion for summary adjudication as to Mooney's claims for violation of section 31721, subdivision (a) and violation of section

31725. The County's notice of motion stated: "The only question that needs to be determined is. whether Valerie Mooney was 'dismissed' from her employment with the County . . . . If she was not dismissed, which the County contends, then Government Code sections 31721(a) and 31725 are inapplicable as a matter of law and Defendant County of Orange's Motion for Summary Adjudication must be granted." (Some capitalization omitted.)

The trial court (Judge Linda S. Marks) granted the motion in its entirety. The court's minute order explained: "The undisputed facts show that [Mooney] was never formally terminated and that there have been on-going discussions between [Mooney] and [the County] regarding possible positions with the County. There has not been a 'severance' or any discernible date of termination under section 31725 shown by [Mooney]. [¶] An employee who is neither sent away nor removed but voluntarily absents himself or herself from the job, without more, cannot validly claim that he or she was 'dismissed' by the employer, and an employee who is uncertain of his or her status ·or the existence of the employment relationship is entitled to seek clarification. *Stephens v. County of Tulare*, 38 Cal.4th 793, 802 [43 Cal.Rptr.3d 302, 134 P.3d 288] (2006). [¶] [Mooney] has not sought clarification of her status, and she has not presented any evidence to support a finding that she was terminated by [the] County. [¶] While [Mooney] has argued that *Phillips v. County of Fresno* 225 Cal.App.3d 1240 [277 Cal.Rptr. 531] (1990) is controlling, *Phillips* does not hold that an employee's voluntary decision to take leave time is equivalent under section 31725 of being dismissed for disability. *Phillips* holds that that failure to reinstate an employee·following a period of permissive, voluntary leave, can constitute a 'dismissal' despite the absence of a formal termination or firing. [¶] [Mooney] has been unable to point to an exact date of termination with the County particularly in light of on-going discussions with the County in August of 2010 regarding employment opportunities which post date the filing of the complaint. Case law refers to an employment relationship terminating at the employer's election. The County of Orange has not elected to terminate [Mooney]. As a result, [Mooney] has not been dismissed as defined under the [G]overnment [C]ode and not entitled to the statutory protections afforded under Gov[ernmen]t Code [sections] 31721 and 31725. [Mooney]'s undisputed facts reveal that she has not been terminated from her employment. [¶] The Court GRANTS the motion for summary adjudication of causes of action 4 and 5 following *Stephens* and finds that [Mooney] has not established that she was dismissed from employment by defendant County."

A jury thereafter found in favor of the County on Mooney's disability discrimination, failure to provide a reasonable accommodation, and failure to engage in the interactive process claims. The trial court (Judge Gregory H. Lewis) found in favor of the County on Mooney's claim seeking "equitable

relief of reinstatement." The court explained it could "find no basis in law or in equity to reinstate Ms. Mooney."

Judgment was entered in favor of the County on all of Mooney's claims, and Mooney appealed. Mooney filed an unopposed request for judicial notice requesting that this court take judicial notice of the legislative history of sections 31721, subdivision (a) and 31725. Mooney's request is granted. (See Evid. Code, §§ 452, subd. (c), 459, subd. (a); *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 279, fn. 9 [46 Cal.Rptr.3d 638, 139 P.3d 30] ["[t]he legislative history in this case is relatively brief and our citation to it is limited to various versions of the legislation and committee reports, all of which are indisputably proper subjects of judicial notice"].)

## DISCUSSION

### I.

#### STANDARD OF REVIEW

We review orders granting summary judgment or summary adjudication de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35 [123 Cal.Rptr.2d 555].) A motion for summary judgment or summary adjudication is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "[W]hen, as here, the question involves the trial court's interpretation of a statute and the legal meaning of a written instrument on undisputed evidence, the question is one of law, subject to de novo review." (*Kelly v. County of Los Angeles* (2006) 141 Cal.App.4th 910, 919 [46 Cal.Rptr.3d 335] (*Kelly*).)

### II.

#### APPLICABLE RULES OF STATUTORY INTERPRETATION

Our analysis of the trial court's order granting summary adjudication depends on our interpretation of sections 31725 and 31721, subdivision (a). We therefore begin by reviewing the applicable rules of statutory interpretation.

In *Martinez v. Combs* (2010) 49 Cal.4th 35, 51 [109 Cal.Rptr.3d 514, 231 P.3d 259], the California Supreme Court stated: " '[O]ur fundamental

task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] In this search for what the Legislature meant, '[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' "

### III.

THE UNDISPUTED FACTS SHOW MOONEY HAS NOT BEEN DISMISSED
WITHIN THE MEANING OF SECTION 31725 AS A MATTER OF LAW.

Mooney challenges the trial court's order granting summary adjudication as to Mooney's claim that the County violated section 31725, part of the County Employees Retirement Law of 1937 (§ 31450 et seq.). Section 31725 provides: "Permanent incapacity for the performance of duty shall in all cases be determined by the board. [¶] If the medical examination and other available information do not show to the satisfaction of the board that the member is incapacitated physically or mentally for the performance of his duties in the service and the member's application is denied on this ground the board shall give notice of such denial to the employer. The employer may obtain judicial review of such action of the board by filing a petition for a writ of mandate in accordance with the Code of Civil Procedure or by joining or intervening in such action filed by the member within 30 days of the mailing of such notice. If such petition is not filed or the court enters judgment denying the writ, whether on the petition of the employer or the member, *and the employer has dismissed the member for disability* the employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal." (Italics added.)

The California Supreme Court has explained that section 31725 requires that "if (1) the county board of retirement rules an applicant/ employee is not permanently disabled so as to be entitled to a disability retirement, (2) the board denies the employee's disability retirement application on that ground, and (3) no appeal is filed or all appeals are final, then the applicant/employee is entitled to reinstatement to his or her prior position *if* (4) the employing county has previously '*dismissed*' the employee 'for disability.' [Citation.] Section 31725, where applicable, has been interpreted to require not only reinstatement but also payment of wages and benefits that

would have accrued during the period of dismissal. [Citations.]" (*Stephens v. County of Tulare, supra*, 38 Cal.4th at p. 801, italics added (*Stephens*).)

In this case, it is undisputed Mooney applied for disability retirement, OCERS denied Mooney's application on the ground she was not permanently disabled to qualify for disability retirement, and Mooney's appeal of OCERS's decision was denied. Section 31725 would require that the County reinstate Mooney to her former position if the County had dismissed her "for disability." (§ 31725.) Here, therefore, as in *Stephens*, we must determine whether the undisputed facts show the County "dismissed" Mooney "for disability," in analyzing the trial court's grant of summary adjudication of Mooney's violation of section 31725 claim.

In *Stephens, supra*, 38 Cal.4th at page 802, the Supreme Court stated it was "require[d] . . . to discern the plain meaning of the word 'dismissed' as used in section 31725." The court stated: "To 'dismiss' means to 'send or remove from employment.' [Citation.] As used in connection with section 31725, 'dismissed,' 'terminated,' and 'released' all share a common meaning. Those terms describe a circumstance in which the employment relationship, at the employer's election, has ended. Because the relationship has ended, (1) the employer no longer has an obligation to pay salary or other forms of compensation, and (2) the employee has no basis for expectation that a position exists, will be kept open, or will be made available upon the employee's offer to return to work. Because section 31725 is concerned only with the consequences of '[p]ermanent incapacity for the performance of duty,' we can reasonably assume the statute addresses permanent, not merely temporary, absence from employment. An employee who is temporarily absent from the workplace due to illness or vacation, where both employer and employee understand the employee will return to work when the reason for the leave ceases, would have no need to pursue a disability retirement before the board of retirement." (*Ibid.*)

The Supreme Court further stated: "In addition, a dismissal as contemplated by section 31725 requires an employer action that results in severance of the employment relationship. An employee who is neither sent away nor removed, but voluntarily absents himself or herself from the job, without more, cannot validly claim he or she was 'dismissed' by the employer. An employee who is uncertain of his or her status or the existence of an employment relationship is entitled to seek clarification." (*Stephens, supra*, 38 Cal.4th at p. 802.) "Where applicable, section 31725 requires reinstatement be retroactive to the day following the effective date of the dismissal and to include payment of back wages and benefits that would have otherwise accrued during the dismissal period." (*Kelly, supra*, 141 Cal.App.4th at p. 919.)

In *Kelly, supra,* 141 Cal.App.4th at page 913, the appellate court applied *Stephens, supra,* 38 Cal.4th 793, in concluding the plaintiff had not been dismissed from her employment within the meaning of section 31725. The plaintiff in *Kelly* asserted that the employer's action of sending the plaintiff a letter informing her that it was unable to accommodate her temporary work restrictions and was removing her from the regular payroll constituted "the functional equivalent of a termination" of employment and thus a dismissal under section 31725. (*Kelly, supra,* at pp. 923–924.) The appellate court stated: "Although [the plaintiff] correctly observes that the March 18, 1996 letter, fairly interpreted, advised [the plaintiff] that [the employer] had no available position to accommodate her *'temporary* work restrictions,' the letter on its face did not indicate that [the employer] viewed those restrictions as permanent. [Citation.] Nor is a dismissal established merely by the fact that [the plaintiff] was taken off the regular payroll. As the Supreme Court has made clear, *the term 'dismissed' does not simply mean the absence of a salary.* A person could be on unpaid leave, perhaps as a reasonable accommodation under the Fair Employment and Housing Act for a significant period of time, but that alone is not sufficient to find a termination." (*Id.* at p. 924, second italics added.)

The appellate court in *Kelly, supra,* 141 Cal.App.4th at page 924, further stated, "[n]evertheless, assuming [the employer] viewed [the plaintiff]'s work restrictions as permanent, if [the employer] had informed [the plaintiff] of its inability to accommodate her permanent work restrictions and left it at that, without any indication of alternative employment, [the plaintiff] would have a strong basis for asserting she had been functionally terminated on grounds of permanent disability. [Citation.] But that is not what happened." (Fn. omitted.) The appellate court's conclusion that the plaintiff had not been dismissed was based on the employer's offer of vocational rehabilitation for a different position—an act that was inconsistent with "a severance of the employment relationship." (*Id.* at pp. 924–925.) Also, the plaintiff had testified that she did not believe she had been terminated after receiving the letter stating that there were no available positions to accommodate her temporary work restrictions. (*Id.* at p. 925.) The appellate court further observed that, following completion of vocational rehabilitation, the plaintiff did not contact the employer's return-to-work coordinator or any other administrator for a new placement and did not seek clarification from her employer regarding the status of her employment relationship with the employer. (*Id.* at pp. 925–926 ["As *Stephens* makes clear, however, it is the employee's obligation to seek clarification in the event he or she is uncertain as to the continuing existence of the employment relationship."].)

The *Kelly* court explained its conclusion no dismissal occurred was "reinforced by the legislative purpose of section 31725. Section 31725's retroactive-reinstatement requirement is intended to act as a safety net for

those employees who find themselves 'in limbo, having neither employment nor disability income.' [Citation.] [The plaintiff] did not face this financial dilemma in March 1996 when she was given vocational rehabilitation and statutory compensation in the form of Labor Code section 139.5 benefits. [Citation.] She thus did not fall in the class of persons left without employment or disability income that section 31725 was intended to protect. [Citation.] To the extent [the plaintiff] lacked employment-related income following the cessation of her vocational rehabilitation benefits in July 1997, that was the product of her own inaction, rather than the result of a termination. Nothing prevented [the plaintiff] from returning to [the employer] following her completion of her vocational rehabilitation and requesting placement. [Citation.] As we have explained, had [the plaintiff] requested placement following vocational rehabilitation and been denied employment with [the employer], it would have been reasonable to conclude she had been functionally dismissed at that point. [¶] In sum, the March 18, 1996 letter does not evince an intent to sever the employment relationship nor is such an intent reflected in any of the evidence in this case, all of which is generally undisputed." (*Kelly, supra,* 141 Cal.App.4th at p. 926, fn. omitted.)

In this case, it is undisputed that the County never terminated Mooney's employment; Mooney remained on disability leave until the date she signed the declaration filed in opposition to the County's motion for summary adjudication. Mooney does not dispute she is physically unable to perform the duties of a deputy juvenile correctional officer II position. The County did not notify her that her employment was terminated or that it was unable to find another position that was within her work restrictions. To the contrary, the undisputed evidence establishes the County's ongoing efforts to accommodate Mooney by finding her an alternative position within her work restrictions. The County participated in several interactive meetings with Mooney and also communicated to all of its agencies, on Mooney's behalf, in an effort to identify open positions for which Mooney was qualified and that were within her work restrictions.

On two separate occasions, the County offered Mooney a position within her work restrictions. Mooney rejected the County's offers because the pay and benefits were less than those of the deputy juvenile correctional officer II position she is unable to perform. She repeatedly informed the County she would not accept any placement without her sworn status and safety retirement benefits. Mooney's ongoing employment relationship with the County is further evidenced by the fact she has neither applied for nor received unemployment insurance benefits. Mooney has not looked for another job since 2004. To the extent Mooney has lacked employment-related income following the denial of her application for disability retirement, it is the

product of her inaction, namely, not accepting the alternative placements offered by the County, rather than the result of any dismissal from employment with the County.

The County's conduct of engaging in the interactive process and offering alternative placements to Mooney is inconsistent with an express or implied severance of its employment relationship with her. The trial court, therefore, did not err by concluding Mooney was not dismissed within the meaning of section 31725, as a matter of law.

Mooney cites several appellate court decisions that preceded the Supreme Court's interpretation of section 31725 in *Stephens, supra,* 38 Cal.4th 793. (See *McGriff v. County of Los Angeles* (1973) 33 Cal.App.3d 394 [109 Cal.Rptr. 186]; *Leili v. County of Los Angeles* (1983) 148 Cal.App.3d 985 [196 Cal.Rptr. 427]; *Phillips v. County of Fresno, supra,* 225 Cal.App.3d 1240; *Raygoza v. County of Los Angeles* (1993) 17 Cal.App.4th 1240 [21 Cal.Rptr.2d 896]; *Tapia v. County of San Bernardino* (1994) 29 Cal.App.4th 375 [34 Cal.Rptr.2d 431]; *Hanna v. Los Angeles County Sheriff's Dept.* (2002) 102 Cal.App.4th 887 [125 Cal.Rptr.2d 686].) In *Stephens, supra,* 38 Cal.4th at page 806, the Supreme Court agreed with these cases to the extent they stood for the proposition that "a qualifying dismissal within the meaning of section 31725 need not be accompanied by any particular formality," but held that "some form of a termination is nevertheless required." The Supreme Court stated that to the extent the plaintiff in *Stephens* asserted otherwise, he "overstate[d] the reach of prior judicial interpretations of section 31725." (*Ibid.*)

Furthermore, all of the above cited pre-*Stephens* appellate court cases are distinguishable from this case. As noted by the Supreme Court in *Stephens, supra,* 38 Cal.4th at page 807, neither *McGriff v. County of Los Angeles* nor *Leili v. County of Los Angeles* directly addressed the meaning of the word "dismissed" in the context of section 31725 and the analyses in those cases assumed a dismissal, within the meaning of that statute, had been effected. (See *Kelly, supra,* 141 Cal.App.4th at p. 924 ["all that may be gleaned" from *Leili v. County of Los Angeles* as to the meaning of the term "dismissal" in § 31725 "is the general principle that 'no *formal* dismissal from the job is necessary in order to activate section 31725's protections; an employer's action that has the same effect will do' "].)

In *Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at page 1242, the employer informed the plaintiff he was "relieved of duty (fired)" from his job. The dispute in *Raygoza v. County of Los Angeles* "centered not on whether [the plaintiff] was in fact dismissed, but on whether the [employer] was required to reinstate him when no position compatible with his work restrictions was available." (*Stephens, supra,* 38 Cal.4th at p. 807.)

The court in *Phillips v. County of Fresno, supra,* 225 Cal.App.3d 1240, held that an employer's failure to reinstate an employee following a period of permissive voluntary leave can constitute a dismissal despite the absence of a formal termination of employment or firing. Similarly, in *Hanna v. Los Angeles County Sheriff's Dept., supra,* 102 Cal.App.4th at page 890, the plaintiff requested reinstatement to her original position, but was denied reinstatement by the employer based on a work restriction determined in a Workers' Compensation Appeals Board proceeding. Here, the County did not refuse Mooney's request for reinstatement following a leave of absence— Mooney does not dispute that she is physically unable to perform the duties of a deputy juvenile correctional officer II position. (Cf. *Tapia v. County of San Bernardino, supra,* 29 Cal.App.4th at p. 380 [the plaintiff was reinstated by the employer but sought retroactive salary and benefits].)

In her reply brief, Mooney argues that section 31725 mandates that she be reinstated to paid status, not necessarily to active duty status because she cannot perform the functions of her former position. We do not need to resolve the extent of the reinstatement requirement of section 31725 because, for all of the reasons discussed *ante,* that requirement was not triggered because Mooney was never dismissed by the County.

IV.

### MOONEY'S CLAIM FOR VIOLATION OF SECTION 31721, SUBDIVISION (a) FAILS AS A MATTER OF LAW.

■ Mooney contends the trial court erred by granting summary adjudication as to her claim for violation of section 31721, subdivision (a), which provides: "A member may be retired for disability upon the application of the member, the head of the office or department in which he is or was last employed, the board or its agents, or any other person on his behalf, *except that an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any eligible member believed to be disabled,* unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Article 9 (commencing with Section 31700)." (Italics added.) "As with all statutory retirement systems, CERL [(County Employees Retirement Law of 1937 (§ 31450 et seq.))] must be given a liberal construction in favor of the employee to carry out its beneficent policy." (*Rodarte v. Orange County Fire Authority* (2002) 101 Cal.App.4th 19, 23 [123 Cal.Rptr.2d 475].)[1]

---

[1] The purpose of the County Employees Retirement Law of 1937 is set forth in section 31451, which states: "The purpose of this chapter is to recognize a public obligation to county

Mooney argues section 31721, subdivision (a) was violated by the County because it "separate[d]" Mooney from her employment because of her disability and did not assist her in filing for disability retirement or in appealing OCERS's denial of her application for disability retirement. The trial court concluded section 31721, subdivision (a) was inapplicable because the County did not separate Mooney from her employment. In reaching that conclusion, the court used the same reasoning it used in concluding the County did not dismiss Mooney under section 31725. Mooney argues the terms "separate" within the meaning of section 31721, subdivision (a), and "dismissed" within the meaning of section 31725, are not interchangeable.

The parties have not cited any case analyzing the definition of the term "separate" as it appears in section 31721, subdivision (a), and we have found none. Mooney argues that the Legislature's decision to use different terms in the same statutory scheme reflects its intention that there be "a difference in meaning" between them.

It is true that the terms "separate" and "dismissed," when used generally in employment law, are not necessarily interchangeable terms. For example, either the employer or the employee may initiate a "separation" from that employee's employment. A "dismissal" from employment typically refers to an involuntary termination of an employee's employment. (See, e.g., *Stephens, supra*, 38 Cal.4th at p. 802 [within the meaning of § 31725, the terms "dismissed," "terminated," and "released" share a common meaning and each "describe[s] a circumstance in which the employment relationship, *at the employer's election*, has ended" (italics added)].)

Considering the terms "dismissed" and "separate" in the context of the particular statute in which they appear sheds great light on their meaning in those statutes. Here, as an employer's duties arising under section 31725 are triggered by the *employer's* act of dismissing an employee, the employer's duties arising under section 31721, subdivision (a) are similarly triggered by an act of the *employer*—namely, the employer's act of separating the employee from employment. Such an involuntary separation from employment, from the employee's perspective, is indistinguishable from a dismissal from employment. Notwithstanding the Legislature's use of different terminology, we conclude the Legislature intended the term "dismissed" in section 31725 and "separate" in section 31721, subdivision (a) to mean the same

and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services and to provide a means by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed."

thing. (See *Ganley v. County of San Mateo* (N.D.Cal., Dec. 20, 2007, No. C06-3923 TEH) 2007 U.S.Dist. Lexis 93489, pp. *37, *15–*22 [holding an employer had not separated an employee from employment within the meaning of § 31721, subd. (a) for the same reasons the court concluded her employment had not been terminated or that the employee had been dismissed within the meaning of § 31725].)

Our interpretation of the term "separate" in section 31721, subdivision (a) as meaning the same thing as "dismiss[]" in section 31725 is consistent with the analysis of *Gonzalez v. Department of Corrections & Rehabilitation* (2011) 195 Cal.App.4th 89, 94–96 [123 Cal.Rptr.3d 849] (*Gonzalez*), in which the appellate court concluded the term "separate" in section 21153, a statute containing substantially similar language as section 31721, subdivision (a), meant the termination of employment.[2] Section 21153 provides in pertinent part: "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled, unless the member waives the right to retire for disability . . . ."

The court in *Gonzalez* concluded that, under section 21153, "a state agency's duty to apply for disability retirement on behalf of a civil service employee arises only when the agency determines that the employee is medically unable to perform his or her usual job functions *or the functions of any other available position within the agency* and the employee is eligible for disability retirement and chooses not to waive the right to disability retirement." (*Gonzalez, supra*, 195 Cal.App.4th at p. 96, fn. omitted, italics added.) The appellate court explained that "there is no conflict between section 21153 and section 19253.5, subdivision (c), which permits medical demotion or transfer within the agency when an employee is medically unable to perform the functions of his or her present position but is able and qualified to perform the functions of another position, even if it is less than full time or otherwise results in lower pay. *Section 21153 prohibits only 'separation' of a disabled employee, i.e., termination; it does not prohibit demotion or transfer.*" (*Ibid.*, italics added.)

■ The application of the *Gonzalez* court's interpretation of section 21153 to the virtually identical language of section 31721, subdivision (a) strongly supports our conclusion that the term "separate" in the context of section 31721, subdivision (a) refers to the employer's act of terminating employment, and thus shares a common meaning with the term "dismissed," as that

---

[2] Section 21153 is part of the Public Employees' Retirement Law (§ 20000 et seq.), known as PERL, and is set forth in Government Code title 2 (Government of the State of California), division 5 (Personnel), part 3 (Public Employees' Retirement System), chapter 12 (Retirement from Employment), article 6 (Disability Retirement). (See § 20000 et seq.)

term appears in section 31725. Mooney has not offered any legal authority supporting a contrary interpretation. Therefore, the trial court did not err by concluding Mooney had not been separated from her employment by the County for all the same reasons the court properly concluded she had not been dismissed from her employment by the County, discussed *ante*. Summary adjudication was thus properly granted as to Mooney's violation of section 31721, subdivision (a) claim.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

Rylaarsdam, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied February 5, 2013.