Filed 6/17/13  Clampett v. Heger CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EARL A. CLAMPETT, JR.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JOEL W. HEGER et al., as Trustees, etc.,<br><br>    Defendants and Respondents. | B241142<br><br>(Los Angeles County<br>Super. Ct. No. BP113428) |

 

APPEAL from an order of the Los Angeles County Superior Court, Michael I. Levanas, Judge.  Reversed and remanded with directions.

Law Offices of Henry N. Jannol, Henry N. Jannol, Neal B. Jannol; Andreos & Andreos, and George P. Andreos for Plaintiff and Appellant.

Palermo, Barbaro, Chinen & Pitzer, Philip Barbaro, Jr. for Defendants and Respondents.

_____

Earl A. Clampett, Jr. appeals from an order entered after the probate court sustained without leave to amend a demurrer to his petition seeking to compel trustees Joel W. Heger and Christian M. Heger to make a distribution under the terms of a trust. The probate court ruled Clampett, the holder of a durable power attorney conveyed to him by the trust beneficiary, had no standing as a matter of law to demand distribution on his principal's behalf and, in any event, his request did not conform to the requirements in the trust. We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Trust's "Five-or-Five" Clause*

Jack Heger and Marion Heger were married for 27 years until Jack's[1] death in April 2008. When Jack died, his sons from a prior marriage, Joel and Christian, became trustees of his separate property trust. The trust contained a "five-or-five clause," granting Marion, as Jack's surviving spouse, the right to request an annual distribution of the greater of $5,000 or 5 percent of the value of the trust as of the end of the preceding calendar year. "This request shall be by a written document specifically referring to this right of withdrawal during December of each such calendar year. This right of withdrawal is noncumulative, so that if the Settlor's spouse does not withdraw, during December of any one calendar year, the full amount allowed, the right to withdraw the amount not withdrawn shall lapse at the end of that calendar year."

2. *Clampett's Exercise of the Five-or-Five Clause on His Mother's Behalf*

Marion suffers from Alzheimer's disease. On August 25, 2006, prior to Jack's death, Marion conveyed to Clampett, her son from a prior marriage, a general durable power of attorney appointing him as her attorney-in-fact for all purposes, "effective immediately."

---

[1]     Because Marion and Jack and Jack's two sons, Joel and Christian, share the same surname, we refer to them by their first names for convenience and clarity. (See *Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1; *Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 188, fn. 13.)

On December 3, 2010 Clampett's lawyer, Geoge Andreos, sent a letter to Joel and Christian and their counsel "on behalf of Marion" requesting the trustees to "please accept this as a written request for the payment of 5% of the principal valuation" of the trust "as determined at the end of the preceding calendar year. (December 31, 2009)." The trustees did not respond.

On January 4, 2011 Clampett, through Andreos, sent another letter, reminding the trustees of his timely demand on December 3, 2010 and requesting the trustees' prompt response.

On January 10, 2011 counsel for Joel and Christian denied the request, stating in a letter to Andreos, "It is my understanding that you do not represent Marion Heger, but even if you did, the trust instrument would not provide for your exercise on her behalf. Therefore, the attempted exercise of the 5 or 5 power does not conform to the requirements of the trust and is rejected."

On January 26, 2011 Andreos responded, asserting the rejection of Clampett's demand on Marion's behalf was disingenuous and a violation of the trust terms. Andreos asserted the trustees had long known he represented Clampett, Marion's attorney-in-fact; indeed the trustees had previously forwarded accountings of trust assets to him for that reason. Clampett also forwarded to the trustees the signed durable power of attorney showing his status as Marion's attorney-in-fact. The trustees continued to deny the request.

3. *Clampett's Petition To Compel Distribution Under the Trust's Five-or-Five Clause*

On May 31, 2011 Clampett filed a petition pursuant to Probate Code sections 17200 and 850[2] to compel the trustees to make the distribution to his mother under the trust's five-or-five clause. Clampett attached to his petition the trust document

---

[2] Probate Code sections 17200 and 850 permit a person to request the court to make certain orders, including directing a trustee to convey property in compliance with the terms of a trust instrument and to hold a trustee personally liable if the failure to do so was in bad faith.

and the correspondence between his counsel and the trustees' counsel concerning his timely demand. The petition also included causes of action for elder abuse, breach of fiduciary duty and a request for an accounting.

The trustees demurred to the petition and accompanying causes of action, asserting the five-or-five power was not properly exercised. According to the trustees, the trust required Marion to submit her request to exercise her rights under that provision in writing. Marion never did. The request from Andreos, Clampett's attorney, they argued, was insufficient as a matter of law. Marion or Clampett, as her agent and attorney-in-fact, was required to personally exercise that right, not Clampett's attorney. The probate court agreed with the trustees that Andreos's effort to exercise the right on behalf of Clampett was insufficient as a matter of law and sustained the demurrer to that cause of action without leave to amend. Because each of the remaining causes of action was premised on a valid exercise of the five-or-five power under the trust, they, too, failed as a matter of law.

## DISCUSSION

1. *Standard of Review*

On appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We may also consider matters that have been judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; see *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; see *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [demurrer tests sufficiency of complaint based on facts included in the complaint, those subject to judicial notice and those conceded by plaintiffs].) We liberally construe the pleading with a view to substantial justice between

4

the parties. (Code Civ. Proc., § 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Absent conflicting extrinsic evidence, the interpretation of a written instrument, including a trust, is a judicial function subject to de novo review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 965; *Mooney v. County of Orange* (2013) 212 Cal.App.4th 865; *Wolf v. Walt Disney Pictures and Television* (2008) 162 Cal.App.4th 1107, 1134.)

2. *The Probate Court Erred in Sustaining the Demurrer Without Leave To Amend*

The trust provides that "the trustee shall distribute to the Settlor's spouse such amounts as she shall request from principal, not exceeding in any calendar year the greater" of $5,000 or 5 percent of the trust property. "This request shall be by a written document specifically referring to this right of withdrawal during December of each such calendar year." Thus, to invoke the five-or-five power, the trust requires the following: (1) Marion must request the distribution; (2) the request must be made in writing; and (3) the request must be made in a timely manner. All three requirements were satisfied here.

Clampett, as Marion's attorney-in-fact for all purposes, was legally entitled to make the request on Marion's behalf; and that request was just as valid as if Marion had made it herself. (See Prob. Code, § 4261 ["[i]f a power of attorney grants general authority to an attorney-in-fact and is not limited to one or more express actions, subjects, or purposes for which general authority is conferred, the attorney-in-fact has all the authority to act that a person having the capacity to contract may carry out through an attorney-in-fact specifically authorized to take the action"]; see also Civ. Code, § 2330 ["[a]n agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal"].) While there are certain occasions where a general power of attorney is insufficient to bind the principal (see Prob. Code, § 4264 [general power of attorney may not be used to create, modify or revoke a trust or make a loan to the

5

attorney-in-fact, unless expressly authorized in the power of attorney]; *Estate of Huston* (1997) 51 Cal.App.4th 1721, 1726 [same]),[3] there is no contention, much less any facts in the petition to suggest, that any of those restrictions on a general power of attorney applied here.

The trust itself designates when the holder of rights must exercise them personally. For example, paragraph 2.3 of the trust states Jack's powers to amend or revoke the trust are "personal to" him and not "exercisable by any guardian, conservator, or other person." No similar limiting language appears in the five-or-five clause. Indeed, nothing in the trust document precluded Clampett from acting on Marion's behalf as her designated agent in regard to demanding a distribution under this clause.

The trustees appear to concede this point—that Clampett could have exercised the power on Marion's behalf had *he* submitted a signed request for distribution—but argue that *he* did not "sign a request"; his lawyer, Andreos, signed the letter. Thus, they argue, Clampett failed to comply with the requirements of the trust. However, nothing in the trust requires Marion's signature (or, in her stead, that of her attorney-in-fact). It requires only that Marion make the demand in a writing documenting her request. Thus, Marion

---

[3]     Probate Code section 4264 provides, "An attorney-in-fact under a power of attorney may perform any of the following acts on behalf of the principal or with the property of the principal only if the power of attorney expressly grants that authority to the attorney-in-fact: [¶] (a) Create, modify, revoke, or terminate a trust, in whole or in part. If a power of attorney under this division empowers the attorney-in-fact to modify or revoke a trust created by the principal, the trust may be modified or revoked by the attorney-in-fact only as provided in the trust instrument. [¶] (b) Fund with the principal's property a trust not created by the principal or a person authorized to create a trust on behalf of the principal. [¶] (c) Make or revoke a gift of the principal's property in trust or otherwise. [¶] (d) Exercise the right to reject, disclaim, release, or consent to a reduction in, or modification of, a share in, or payment from, an estate, trust, or other fund on behalf of the principal. This subdivision does not limit the attorney-in-fact's authority to disclaim a detrimental transfer to the principal with the approval of the court. [¶] (e) Create or change survivorship interests in the principal's property or in property in which the principal may have an interest. (f) Designate or change the designation of beneficiaries to receive any property, benefit, or contract right on the principal's death. [¶] (g) Make a loan to the attorney-in-fact."

could have made the request through her own attorney, provided the request was in writing and made in a timely fashion. The result is no different simply because it was made by the attorney for Marion's attorney-in-fact for all purposes.

The trustees' reliance on *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396 (*Blanton*) is misplaced. The plaintiff in *Blanton* sued her health care provider for malpractice. The plaintiff's lawyer then entered into an agreement with defendants to submit the action to binding arbitration. After the defendants sought to compel arbitration, the plaintiff argued she was not bound by her attorney's agreement because she had not consented to it. The Supreme Court held an attorney may not, and has no apparent authority under the laws of agency to, surrender any substantial right of his or her client or enter into any contracts affecting the client's substantial rights without the client's consent. (See *id.* at p. 407 ["'[a]bsent express authority, it is established that an attorney does not have implied plenary authority to enter into contracts on behalf of his client'"; "[w]hen a client engages an attorney to litigate in a judicial forum, the client has a right to be consulted, and his consent obtained, before the dispute is shifted to another, and quite different, forum, particularly where the transfer entails the sort of substantial consequences present here"]; *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1221 [same]; see also *Sanker v. Brown* (1985) 167 Cal.App.3d 1144, 1147 ["an attorney's mere assertion of authority to waive a trial de novo on behalf of his client cannot be relied upon"; "[a]dding a party's signature line to the stipulation is an obvious preventative measure"].)

Unlike the situation in *Blanton,* there is no allegation here that Andreos entered into a contract without his client's consent; none of the facts alleged in Clampett's petition suggest, let alone establish, an absence of implied or apparent authority on which the trustees could reasonably rely in rejecting the distribution demand. To the contrary, the petition asserts Andreos acted at Clampett's behest and in accordance with the trust's terms to provide a timely writing to preserve Marion's distribution rights and the trustees knew Andreos was acting as the agent of Marion's attorney-in-fact. Nothing in the trust documents required Marion to exercise her five-or-five distribution right personally

7

rather than through her designated agent.  Accordingly, the court erred in sustaining the demurrer without leave to amend and dismissing the petition.

**DISPOSITION**

The order dismissing the petition is reversed.  The matter is remanded to the trial court with directions to enter an order denying the trustees' demurrer and to conduct further proceedings not inconsistent with this opinion.  Clampett is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

ZELON, J.

8