[No. G027871. Fourth Dist., Div. Three. July 18, 2002.]

MICHAEL RODARTE, Plaintiff and Appellant, v.
ORANGE COUNTY FIRE AUTHORITY, Defendant and Respondent.

COUNSEL

Lemaire, Faunce, Pingel & Singer, Steven R. Pingel, Edward L. Faunce and Larry J. Roberts for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, M. Lois Bobak and Terry C. Andrus for Defendant and Respondent.

OPINION

**RYLAARSDAM, Acting P. J.**—Plaintiff Michael Rodarte sought a writ of mandate directing his employer defendant Orange County Fire Authority (OCFA) to pay his salary retroactively while an application for disability retirement was pending with the Orange County Employee's Retirement System (OCERS). He also sought damages for deprivation of his alleged right to continued compensation without due process of law (42 U.S.C. § 1983) and breach of duty under state law. Plaintiff appeals from an order sustaining defendant's demurrer. We affirm.

FACTS

Plaintiff was a firefighter employed by defendant since its inception in 1994. Within a few months of his employment he suffered a back injury while representing defendant in a sporting event. For several months plaintiff took medical leave and depleted his accrued sick time. Over a year later, he obtained a work release from his personal physician but was denied one from an OCFA physician. The OCFA physician instructed plaintiff to continue his physical therapy. One month thereafter plaintiff's personal physician again released him to resume work. But he was again denied release by the OCFA physician, and was ordered to enroll in a "work hardening" program and complete further training at the fire academy. The OCFA physician also prescribed psychological treatment for plaintiff's depression.

The following year, the OCFA physician again denied plaintiff a work release based on his performance on an agility test and ordered further academy training. Plaintiff injured his knee during training and underwent surgery. Two months later plaintiff's physician released him to work. Once again the OCFA physician denied plaintiff a work release. A month thereafter, plaintiff was examined by two new OCFA physicians and finally obtained a work release.

Almost immediately after returning to work, plaintiff became ill and took personal leave. Thereafter defendant took plaintiff off active duty. In October 1998, defendant notified plaintiff it would apply for disability retirement

on his behalf. The next month plaintiff filed his own application for disability retirement. In January 2000, OCERS granted plaintiff disability retirement effective November 1998.

In his petition for writ of mandate and second amended complaint, plaintiff alleged defendant was obligated to keep him "on [the] payroll during the pendency of the OCERS disability retirement application process," and that failure to do so violated Government Code section 31721 (all further statutory references are to this code). He also alleged that failure to continue paying his salary constituted a deprivation of a property interest without due process of law and a breach of duty under the County Employees Retirement Law of 1937 (CERL; § 31450 et seq.). Defendant demurred to the petition/complaint, contending CERL does not provide for continued entitlement to salary during the disability retirement application process and as such does not create a vested property right. The court concluded CERL did not require payment of salary "once [plaintiff] used up his vacation and sick leave and while the application for disability retirement was pending and plaintiff wasn't working," and sustained defendant's demurrer without leave to amend.

### DISCUSSION

On appeal plaintiff contends the court erred in its interpretation of the CERL. Statutory construction is a question of law, and we therefore review the judgment de novo. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212 [100 Cal.Rptr.2d 718].) "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*).)

Both parties direct our attention to section 31721's legislative history. Because the text of section 31721 is not clearly ambiguous, and its meaning is ascertainable from its context within CERL, reference to the legislative history is inappropriate. (*J.A. Jones Construction Co. v. Superior Court*

(1994) 27 Cal.App.4th 1568, 1575 [33 Cal.Rptr.2d 206].) We begin with CERL's stated purpose: "[T]o recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation . . . and to provide a means by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed." (§ 31451.)

As with all statutory retirement systems, CERL must be given a liberal construction in favor of the employee to carry out its beneficent policy. (*Weissman v. Los Angeles County Employees Retirement Assn.* (1989) 211 Cal.App.3d 40, 44 [259 Cal.Rptr. 124] (*Weissman*).)

Article 10 of CERL provides the mechanism for disability retirement of qualified county employees. Section 31720 states that a member who is "permanently incapacitated for the performance of duty shall be retired regardless of age" if the injury arose during the course of employment and the member's duties contribute to the incapacity, or the member has five years of service and does not waive retirement with respect to that specific injury or illness.

Section 31721, subdivision (a), the provision at issue here, establishes the persons with standing to apply for disability retirement: "A member may be retired for disability upon the application of [1] the member, [2] the head of the office or department in which he [or she] is or was last employed, [3] the board or its agents, or [4] any other person on his [or her] behalf, except that an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any eligible member believed to be disabled, unless the member waives the right to retire . . . ."

Plaintiff contends the limitation of an employer's ability to separate a disabled employee who is "otherwise eligible to retire for disability" creates a duty on the part of the employer to continue paying the employee's salary while a retirement application is pending. But section 31721 is silent on this question. It does not explicitly provide for continued compensation. To the contrary, the language is more susceptible to an interpretation that once a disability retirement application has been filed, an employer is not obligated to continue paying an employee who is no longer working. For example, the statute states the application may be filed by the employer for whom the member "is *or was* last employed . . . ." (§ 31721, subd. (a), italics added.) The use of the past tense indicates that a member need not be a current employee (one still drawing a salary) to apply for disability retirement.

Moreover, the statutory context supports the court's conclusion. Section 31722 provides for the timing of a disability retirement application. "The application shall be made while the member is in service, within four months after his or her discontinuance of service, within four months after the expiration of any period during which a presumption is extended beyond his or her discontinuance of service, or while, from the date of discontinuance of service to the time of the application, he or she is continuously physically or mentally incapacitated to perform his or her duties." (§ 31722.) " '[D]iscontinuance of service' " has been interpreted to apply to "a member who has ceased to work for a salary from which deductions are made" within the meaning of section 31641, subdivision (a). (*Weissman, supra,* 211 Cal.App.3d at p. 46.) As such, a disabled member no longer drawing a salary has four months from the date of "discontinuance of service" to apply for disability retirement. Interpreting section 31721 to require an employer to continue paying such a member's salary would make surplusage of a portion of section 31722, a result we must avoid if possible. (*Dyna-Med, supra,* 43 Cal.3d at p. 1387.)

Furthermore, the legislative intent that a member not continue to receive a salary is clearly established by the provision for interim benefits while the application is pending. Upon application for disability retirement, a member may apply for "a service retirement allowance *pending the determination of his or her entitlement to disability retirement,*" with appropriate adjustments to the member's retirement benefits if the retirement application is granted. (§ 31725.7, subd. (a), italics added.) Plaintiff contends this section only applies to those instances when the employee voluntarily separates him- or herself from employment and applies for disability retirement, and not to the current situation where the employer filed the application. Section 31725.7, subdivision (a) states "the *member* may, if eligible, apply for" a retirement allowance pending resolution of his of her application. (Italics added.)

But to read section 31725.7 in such a restrictive manner leads to an absurd result. (See *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1055 [48 Cal.Rptr.2d 1, 906 P.2d 1057] [courts must read statutes to avoid absurdities].) Section 31721 expressly provides that an *employer* may file the retirement application. Plaintiff's reading of section 31725.7 would put the employee who voluntarily applies for retirement at an advantage over one who does not. Even if plaintiff were correct, he was eligible to apply for the interim benefits once he filed his own disability retirement application. He did so only one month after defendant's own retirement application was filed. The record does not indicate whether plaintiff applied for interim benefits, and if so, whether he received them.

Nor does the fact interim benefits are offset against the final disability award make a difference. Plaintiff's argument is that a full salary must be

provided because without it the employee is left with no income pending action by the retirement board on the disability retirement application. Because the Legislature has explicitly provided a remedy in the section 31725.7 discretionary allowance, we are not free to read a different one into section 31721. (See *Gutierrez v. Board of Retirement* (1998) 62 Cal.App.4th 745, 749 [72 Cal.Rptr.2d 837] ["it is not the job of the courts to expand the scope of retirement benefits created by the Legislature and spelled out in a detailed statutory scheme"].)

Plaintiff's other purported causes of action rely on his unavailing argument that section 31721 creates a property right to continued compensation (and duty to pay by defendant). Thus, the court was correct in sustaining defendant's demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

O'Leary, J., and Moore, J., concurred.

A petition for a rehearing was denied August 8, 2002, and appellant's petition for review by the Supreme Court was denied October 16, 2002. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.