Filed 12/29/22  Simon v. City of Orange CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOYCE M. SIMON,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>COUNTY OF ORANGE,<br><br>　　Defendant and Respondent. | G061046<br><br>(Super. Ct. No. 30-2021-01181499)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge.  Affirmed.

Joyce M. Simon, in pro. per., for Plaintiff and Appellant.

Leon J. Page, County Counsel, and Laurie A. Shade, Deputy County Counsel, for Defendant and Respondent.

Joyce M. Simon appeals from a judgment denying her petition for a writ of mandate directing the County of Orange (the County) to reinstate her to her old job and pay back wages and benefits for the time she did not work. The petition was premised on the theory the County terminated her employment during the period the County's board of retirement considered her application for disability retirement under the County Employees Retirement Law of 1937 (CERL). (Gov. Code, § 31450 et seq.)[1] The trial court sustained the County's demurrer based on the following findings: (1) Simon failed to comply with the Government Claims Act (§ 900 et seq.); and (2) the petition did not state a cause of action because Simon was not dismissed from her job. On appeal, Simon maintains the court misinterpreted provisions of the CERL and she was exempt from (or alternatively complied with) the Government Claims Act. We affirm the court's ruling because the petition failed to state a cause of action. Accordingly, we need not address Simon's factually complicated and alternative theories regarding the Government Claims Act.

FACTS

Simon worked for the County as a financial counselor. In 2003, she experienced a workplace injury and was treated by doctors in the workers' compensation system. Her treating doctors and vocational consultant submitted reports regarding the need for job modifications.

In her petition, Simon alleged the County did not comply with its duty to provide reasonable accommodations. In March 2010, Simon decided she had to follow her doctor's orders and stopped working. She explained Dr. Seymore Levine, a state panel qualified medical examiner (QME), determined Simon was 100 percent "permanently and totally disabled and unable to participate in the open labor market"

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

2

because of a medical condition.[2] Additionally, Dr. Larry Danzig, another QME, ordered "permanent work restrictions," which included keyboarding for no longer than 10 to 15 minutes at a time and limited to a cumulative total of two and one-half hours a day.

After receiving several months of "physical and mental therapy," Simon claimed she asked to return to work. She asserted the County would not let her return unless she was cleared by employee health services (EHS) and was prepared to work without restrictions or "rest breaks of any kind."

Simon attached to her petition (exhibit No. 5) a form prepared by York Insurance that was filled out and signed in November 2012 by the County's auditor-controller. The form was titled "Notice of Permanent Restrictions" and asked for information about whether a modified or alternative work was available for Simon. The notice indicated Levine determined Simon was 100 percent disabled due to fibromyalgia. In addition, the notice acknowledged Danzig, the defense QME, determined Simon could not perform "very heavy work" due to a lower back injury. Danzig also opined that because of a right wrist injury Simon was "precluded from repetitive forceful gripping [and] grasping with right upper extremity and prolong computer keyboard input with right upper extremity (clarification: applicant should only do keyboarding for 10 to 15 minutes at which point she should switch to a different activity, not be entitled to a break from work duties)."

The County checked the box on the insurance form stating neither modified nor alternative work was available. The County's auditor-controller handwrote a notation clarifying this selection was made "[d]ue to the above statement '100 [percent] disabled'" because of Simon's medical condition.

---

[2]    In this opinion, for ease of reading, we have fixed grammatical errors and omitted unnecessary capitalization when quoting from the parties' documents and the trial court's ruling.

3

In January 2013, the County filed a disability retirement application on Simon's behalf as required by section 31721. The application was processed by the Orange County Employees Retirement System (OCERS). OCERS sent Simon a letter stating the County filed the application and invited her to "join in the application process" by filling out several forms provided to her. Simon attached the application and OCERS's letter to her petition (exhibit Nos. 7 and 8).

In May 2017, Hilda Garcia, the County's human resources manager wrote Simon a lengthy letter explaining her options for returning to work (exhibit No. 11). Garcia began the letter by summarizing a series of meetings she had with Simon and her husband. During their March 17, 2017 meeting, Garcia recalled Simon said OCERS would soon be ruling on her retirement application. Simon indicated OCERS was recommending denial of the application due to insufficient evidence of permanent incapacity. Garcia wrote, "I informed you during our meeting (and followed up via e-mail), that the County is willing to allow you to return to work in the same position you had prior to January 2013, upon clearance [with EHS]." Garcia added that a few days later, on March 27, 2017, the County received a letter from OCERS's Board of Retirement indicating it denied Simon's application "due to insufficient evidence of permanent incapacity and job causation." Garcia reminded Simon that in early April 2017, she contacted her to schedule an "interactive process meeting."

Garcia stated she held two telephonic interactive process meetings in April 2017, with Simon, her husband, and Leslie Sorrells, an Administrative Manager II. During one meeting, the group reviewed medical work restrictions proposed by an OCERS physician specializing in orthopedic surgery. They also discussed the prior permanent work restrictions set forth by Levine and Danzig. Garcia recalled that at this meeting, "[w]e discussed that the process to return to work is to be cleared by [the County EHS]." Garcia recalled Simon stating EHS told her that she needed additional documentation such as a medical certification with or without medical restrictions.

4

Garcia stated Simon's husband incorrectly opined Simon could return to work without being cleared by EHS.

In addition, Garcia noted, "Since you had additional questions, we agreed that I would contact you with responses to your questions and engage in the interactive process meeting to have you return to work as soon as possible." She added her letter would also include a response to questions raised by Simon's husband in recent e-mails. She began by addressing Simon's questions about section 31725. She clarified that under this statutory provision the County could not dismiss an employee for disabilities, but rather that the County was required to apply for disability retirement benefits for any employee believed to be disabled. Garcia stated this is what the County did in her case, filing a disability application in 2013 after receiving notice of permanent work restrictions.

Next, Garcia sought to clarify Simon's employment status. "[T]he County has never dismissed you or separated you from County employment. In fact, you have been on some form of unpaid leave status since 2010 and the auditor-controller's office has kept your position vacant for those [seven] years pending the determination of your disability retirement application. And, as you are aware, in June 2016, following a determination by OCERS that you should be given certain medical restrictions and our telephonic interactive process meeting, the County agreed to grant your request to remain on an unpaid leave of absence pending the final decision of OCERS on your disability retirement application."

Finally, Garcia responded to Simon's question about returning to work. She wrote, "[A]s the undersigned informed you on March 17, 2017, and again on April 28, 2017, the County remains willing to allow you to return to work in the same position you had prior to January 2013, upon clearance by [EHS] as required by the OCEA MOU [citation]. [¶] Please contact the undersigned . . . to advise when you have obtained medical clearance so that we can make the necessary arrangements for your return to

5

work. In the alternative, the County remains willing to continue your unpaid leave of absence pending the results of your appeal of OCERS' denial of your disability retirement application." (Underscoring omitted.)

On January 21, 2021, Simon filed her petition for a writ of mandate pursuant to section 31725. She challenged the County's failure to comply with its statutory obligations. She alleged the County was required to reinstate her to her old job and pay back wages/benefits.

Following the statutorily required meet and confer, the County demurred to the petition and filed a request for judicial notice. Simon opposed the motion. The County filed a reply. In the trial court's written tentative decision, which became its final ruling, it determined the petition was defective because it was uncertain. It ruled, "The court agrees with [the County's] characterization that the petition is uncertain such that the ability to respond is rendered difficult, if not impossible. The petition is rife with improper case citations and excerpts and arguments. There is no logical flow regarding the facts and legal claims." The court sustained the demurrer and gave Simon 20 days leave to amend her petition.

Simon filed a first amended petition (FAP) and the County again demurred, arguing it suffered from the same defects as the original petition. Simon filed an opposition, and the County filed a reply.

The court prepared a lengthy minute order, sustaining the demurrer without leave to amend. In addition to ruling the claims were barred due to Simon's failure to comply with the Government Claims Act, the court concluded the FAP failed to state a cause of action because there was no showing Simon was dismissed from her employment. The court paraphrased the County's arguments and supporting case authority. "In sum, [the County] argues that [Simon] was never dismissed and is improperly conflating the filing of the disability application with 'dismissing her for disability' in order to invoke section 31725. [¶] Lastly, [the County] points out that the

6

FAP itself proves [Simon] remains a[n] . . . employee as set forth in exhibit No. 11 to the FAP. That document, [the County] claims, shows it engaged in the interactive process, repeatedly offered [Simon] her to return to active duty, and kept her position open, placing her on an extended unpaid leave of absence. [¶] [Simon] argues she was dismissed when [the County] retired her under section 31721. [¶] [Simon's] interpretation of sections 31721 and 31725 are misplaced. [Simon's] retirement under section 31721 was not a dismissal since that statute specifically states that the employer may not separate but shall apply for retirement for the employee based on disability. [¶] Section 31725 requires reinstatement if there was a dismissal based on disability. Here, as set forth in the FAP and discussed above, [Simon] was never dismissed but given extended unpaid leave to return to her position."

The court discussed analogous case authority. (See *Stephens v. County of Tulare* (2006) 38 Cal.4th 793 (*Stephens*); *Mooney v. County of Orange* (2013) 212 Cal.App.4th 865 (*Mooney*); and *Kelly v. County of Los Angeles* (2006) 141 Cal.App.4th 910 (*Kelly*).) It ruled as follows: "Based on those cases and the allegations in the FAP, [Simon] has not sufficiently stated a cause of action as she was not 'dismissed' under sections 31721 and 31725. [¶] The defects in the FAP are unlikely to be cured by amendment. For the reasons stated herein, the court sustains the demurrer to the FAP without leave to amend."

## DISCUSSION

Simon, who is representing herself on appeal, argues the trial court erroneously sustained the County's demurrer without leave to amend for multiple reasons. Her opening brief is difficult to comprehend, but to the extent we can understand her arguments, they are either forfeited or unpersuasive. And because we conclude her claims fail as a matter of law, we need not address her Government Claims Act contentions.

7

I. *Self-represented Litigants*

The trial court's orders are presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority and analysis on each point made, supported by appropriate citations to the material facts in the record. If the appellant does not meet this burden, the argument will be deemed forfeited. (*Ewald v. Nationstar Mortgage* (2017) 13 Cal.App.5th 947, 948 ["the failure to provide legal authorities to support arguments forfeits contentions of error"].) These rules of appellate procedure apply to Simon even though she is representing herself. (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639.) "When a litigant is appearing in propria persona, he [or she] is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]." (*Ibid.*) This is not intended to penalize self-represented litigants; instead, it is necessary to maintain stability in appellate proceedings, requiring adherence to the forms and procedures that govern appeals. This in turn supports the appellate court's independence and unbiased decision-making.

II. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, . . . [t]he reviewing court gives the complaint a reasonable interpretation and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

8

III. *Applicable Legal Principles*

The County's employee retirement system is governed by the CERL. Simon brought her writ of mandate action under Article 10 of CERL. This article "provides the mechanism for disability retirement of qualified county employees." (*Rodarte v. Orange County Fire Authority* (2002) 101 Cal.App.4th 19, 23.) "As with all statutory retirement systems, CERL must be given a liberal construction in favor of the employee to carry out its beneficent policy." (*Ibid.*)

This appeal concerns interpretation of sections 31721 and 31725, two provisions found in Article 10 of the CERL. As will be described in more detail below, any cause of action based on alleged violations of sections 31721 and/or 31725 requires proof the employee was dismissed from employment. These provisions do not apply to employees taking an unpaid leave of absence and to those who are still employed by the County.

The first statutory provision under Article 10 of the CERL, section 31720, subdivision (a), states in relevant part that a member who is "*permanently incapacitated for the performance of duty* shall be retired for disability regardless of age" if the injury arose during the course of employment and the member's duties contribute to the incapacity. (Italics added.)[3]

The second provision, section 31721, subdivision (a), at issue in this case, identifies the persons having standing to apply for disability retirement: "A member may be retired for disability upon the application of [1] the member, [2] the head of the office

---

[3] The retiring member has the burden of proof to show he or she is permanently incapacitated and that such incapacity substantially was the result of performing his or her job duties. (§§ 31723, 31725; *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 46.) The retirement board has the constitutional and statutory duty to manage the retirement fund and, in so doing, to determine whether the fund is obligated to pay benefits to any particular applicant. (*McIntyre v. Santa Barbara County Employees' Retirement System* (2001) 91 Cal.App.4th 730, 734-735.)

9

or department in which he [or she] is or was last employed, [3] the board or its agents, or [4] any other person on his [or her] behalf, except that an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any eligible member believed to be disabled, unless the member waives the right to retire . . . ." In other words, the focus of section 31721, subdivision (a), is to provide the procedural rules for permanent disability applications.

In addition, section 31721, subdivision (a), imposed a ministerial duty on the County to apply for disability retirement *on behalf of* any employee believed to be permanently disabled. The statute expressly provides the County, while performing this ministerial duty, cannot "separate" an employee from his or her employment because of a disability. (*Ibid.*) A different panel of this court has determined "'separate'" and "'dismissal'" are interchangeable terms in the context of the CERL, and both refer "to an involuntary termination of an employee's employment. [Citation.]" (*Mooney, supra,* 212 Cal.App.4th at p. 879.) Thus, to the extent Simon alleges the County violated section 31721, subdivision (a), she had to prove both (1) she was terminated from her employment; and (2) the County did not help her with her retirement application or appeal.

Similarly, Simon's claim asserting the County violated section 31725 required proof she was dismissed from employment. That statute provides: "Permanent incapacity for the performance of duty shall in all cases be determined by the [county board of retirement per section 31459, subdivision (c)]. If the medical examination and other available information do not show to the satisfaction of the board that the member is incapacitated physically or mentally for the performance of his duties in the service and the member's application is denied on this ground the board shall give notice of such denial to the employer. The employer may obtain judicial review of such action of the board by filing a petition for a writ of mandate in accordance with the Code of Civil Procedure or by joining or intervening in such action filed by the member within 30 days

10

of the mailing of such notice.  If such petition is not filed or the court enters judgment denying the writ, whether on the petition of the employer or the member, and the employer *has dismissed the member for disability the employer shall reinstate the member to his employment* effective as of the day following the effective date of the dismissal." (§ 31725, italics added.)  If this statute applies, the employer must also pay the member wages and benefits she would have accrued during the period of her dismissal.  (*Stephens, supra,* 38 Cal.4th at p. 801.)

"In requiring reinstatement with backpay following a determination by the local retirement board that the employee is not permanently disabled, section 31725 represents a legislative effort to address the problem that arises when an employee is caught between inconsistent decisions of the employer and the retirement association on the question of disability and left with neither employment nor disability income. [Citation.]  Section 31725 'solve[s] this problem by giving the retirement board the final word on whether an employee [i]s disabled and providing that dismissed employees must be reinstated if the board f[inds] they [ar]e not disabled, while also giving local governments the right to take a judicial appeal of the board's decision.  In this way, the Legislature [has] ensured that county employees dismissed for disability w[ill] have either employment or disability income and not be left destitute." (*Kelly, supra,* 141 Cal.App.4th at pp. 919-920.)

IV.  *Simon's Arguments*

A.  *Section "31721 is Terminating Employment"*

In her briefing, Simon asserts she was "terminated then dismissed under" sections 31721 and 31725.  Simon repeatedly states, like a mantra, section "31721 is terminating employment."  She criticizes the trial court and the County for failing to follow the law and reading section 31721 as not dismissing Simon "as it pertains to [section] 31725."  These somewhat cryptic contentions are difficult to understand because typically a dismissal determination depends on factual circumstances, not

11

statutory provisions. In other words, a statutory provision cannot, by its mere existence, terminate an employee.

We found the factual genesis of Simon's argument buried in her brief's factual summary. Mixed among factual allegations, Simon makes the legal conclusion the County officially terminated her from employment in January 2013, when the County filed a disability retirement application on her behalf. Because section 31721 imposed this ministerial duty on the County, we interpret Simon's legal argument section "31721 is terminating employment" as meaning compliance with section 31721 results in an act of dismissal. In essence, Simon is arguing section 31721 defines a specific duty that when properly executed should be viewed as conclusive evidence of a dismissal from employment.

There are several problems with this argument. First, the purpose of section 31721 is not to define when an employee is terminated. It simply outlines the procedural rules for filing disability retirement applications. Second, the statute clearly explains that when a county undertakes the application process *on behalf of* its employee, it cannot simultaneously "separate" from that employee because of a disability. (§ 31721.) Thus, not only does section 31721 expressly forbid the County from terminating Simon's employment, but it also simultaneously created a ministerial duty for employers to assist current employees. It should go without saying the County had no duty to file an application on behalf of a *former* employee.

Third, there are no rules of statutory interpretation or case authority supporting Simon's theory section 31721 should be interpreted as requiring the County to dismiss an employee. The statute's plain and ordinary meaning requires the opposite result. It plainly mandates the employer must file a retirement application *while* maintaining an employment relationship.

To accept Simon's interpretation that filing an application effectively dismissed Simon, we would have to ignore the statutory language mandating a contrary

12

result. "It is a familiar rule of statutory interpretation that '[a] construction making some words surplusage is to be avoided.' [Citation.]" (*Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 235; *Jaime Zepeda Labor Contracting, Inc. v. Department of Industrial Relations* (2021) 67 Cal.App.5th 891, 905 [we must seek to give the Legislature's words their usual and ordinary meaning and "'we may neither insert language which has been omitted nor ignore language which has been inserted'"].)

Finally, we also cannot ignore that Simon's evidence (exhibits attached to the FAP) directly contradict her interpretation of section 31721. For example, exhibit No. 8 contained OCERS's letter to Simon inviting her to participate in the process evaluating the disability retirement application. The letter stated, "Under the provisions of [section] 31724 . . . if you are awarded a disability retirement, *the effective date of that retirement will be* no earlier than January 7, 2013, the date of the application filed by your employer. [¶] If you feel the effective date of your disability retirement should be earlier than stated above, please submit written evidence . . . as soon as possible." (Italics added.)

This letter indicates Simon has not yet retired, and more importantly, there was no guarantee of a disability retirement severing the employment relationship. OCERS notified Simon it would select an "effective date" only *after* her application was approved. We understand Simon's argument that *if* she had retired, her employment *would be* terminated. But because OCERS rejected the application there was no designated date of retirement. The County responded to the rejection by asking Simon when she would seek clearance from EHS and resume working, which would not be necessary if the employment relationship had been permanently severed. These exhibits do not support Simon's theory the County dismissed her from employment.

Exhibit No. 11, containing Garcia's letter to Simon, also supports the conclusion the County never terminated Simon's employment. Garcia stated the County invited Simon to return to work or remain on an unpaid leave of absence. The letter also

13

suggests Simon understood she was still employed but not actually working while the parties were sorting out their protracted dispute over reasonable medical accommodations.

Likewise, in her briefing, Simon repeatedly contends that after her retirement application was denied, her employer refused to return her to work under the correct medical restrictions. We read this to be a concession she would have accepted the County's offer to resume working at her old job if there were suitable accommodations for her medical issues. Thus, by making this point Simon has unwittingly admitted she knows she has a job waiting for her with the County, but she will not return because she does not like/accept the terms of employment or workplace conditions. Simon's accommodation-related claims fall outside the scope of section 31725 [requiring employer to reinstate member to his/her employment effective on date employer *dismissed* the member for disability]

B. *Procedural Defect*

We reject Simon's assertion the County's demurrer should have been overruled because of its failure to cite applicable and supporting case authority as required by Code of Civil Procedure section 430.41. She asserts the County failed to produce "one iota of authority" supporting its demurrer. Not so. The County cited to numerous applicable cases, including *Mooney* and *Kelley,* which are the same cases Simon refers to her in briefing.

We believe the disconnect regarding this perceived procedural defect stems from Simon's belief the County and the trial court have cited to, but are misreading, the *Mooney* opinion. She fails to appreciate that having a disagreement about the meaning of legal authority or the interpretation of a statute, is not the same thing as a party failing to "provide legal support for its position that the pleading[s]" are legally insufficient. (Code Civ. Proc., § 430.41, subd. (a)(1) [requirements of meet and confer process before filing a demurrer].)

14

In her briefing, Simon is clearly appalled that the County, who also happened to be the defendant in the *Mooney* case, had the audacity to take a contrary position in her case. She asserts, without citing to any legal authority, that the County "is in violation of the doctrine of judicial estoppel." The argument is waived due to the lack of legal analysis. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) In addition, we conclude the County has taken the *same legal position* in both cases, i.e., there is no requirement to reinstate an employee who was not dismissed from employment. (*Mooney, supra,* 212 Cal.App.4th at p. 868.)

C. *Conduct Resulted in Effective Dismissal*

Simon alleges that because the County would not allow her to return to work, or modify her work to accommodate her disability, she was effectively dismissed from her employment. To support this claim, she points to exhibit Nos. 7 and 8, showing the County would not allow her to work due to her disabilities and instead filed a retirement application. She noted exhibit No. 5 proved the County would not offer her "modified or alternative work" due to the QME report concluding she was 100 percent disabled. She adds exhibit No. 11 confirms that after OCERS' denial of her application, the County was not going to let her return to work.

Although not well pleaded, we interpret her argument as raising a question about whether the County's conduct during the retirement application process, and following OCERS's decision, demonstrated a full separation from employment that should be treated as a dismissal. We appreciate why Simon felt separated from her employment after being placed on involuntary leave, and told she could not return to work, and was no longer being paid wages. She was physically apart from her workplace and disconnected from any job duties. Simon relies on case law holding the terms separation and dismissal are interchangeable (citing *Mooney, supra,* 212 Cal.App.4th at

15

p. 879) to support her argument her forced separation from the workplace qualifies as a dismissal as defined by section 31725. She misunderstands the cases. A separation from employment can be temporary or permanent. It can be initiated by the employee or the employer. Thus, not all types of separations in the employment context qualify as dismissals as defined in section 31725.

As discussed in the *Mooney* case, "the terms 'separate' and 'dismissed,' when used generally in employment law, are not necessarily interchangeable terms." (*Mooney, supra,* 212 Cal.App.4th at p. 879.) A dismissal from employment refers to when an *employer has elected to end* the employment relationship. (*Stephens, supra,* 38 Cal.4th at p. 802.) "Because the relationship has ended, (1) the employer no longer has an obligation to pay salary or other forms of compensation, and (2) the employee has no basis for expectation that a position exists, will be kept open, or will be made available upon the employee's offer to return to work." (*Ibid.*) A separation can be temporary or permanent, and it may be initiated by either the employee or employer. However, consideration of "the terms 'dismissed' and 'separate' in the context of the particular statute in which they appear sheds great light on their meaning in those statutes." (*Mooney, supra,* 212 Cal.App.4th at p. 879.)

"Because section 31725 is concerned only with the consequences of '[p]ermanent incapacity for the performance of duty,' we can reasonably assume the statute addresses permanent, not merely temporary, absence from employment. An employee who is temporarily absent from the workplace due to illness or vacation, where both employer and employee understand, the employee will return to work when the reason for the leave ceases, would have no need to pursue a disability retirement before the board of retirement." (*Stephens, supra,* 38 Cal.4th at p. 802.)

Accordingly, "a dismissal as contemplated by section 31725 requires an employer action that results in severance of the employment relationship. An employee who is neither sent away nor removed, but voluntarily absents himself or herself from the

16

job, without more, cannot validly claim he or she was 'dismissed' by the employer." (*Stephens, supra,* 38 Cal.4th at p. 802.)

"Nor is a dismissal established merely by the fact that [the employee] was taken off the regular payroll. . . . [T]he term 'dismissed' does not simply mean the absence of a salary. A person could be on unpaid leave, perhaps as a reasonable accommodation under the Fair Employment and Housing Act for a significant period of time, but that alone is not sufficient to find a termination. [Citation.]" (*Kelly, supra,* 141 Cal.App.4th at p. 924, citing *Stephens, supra,* 38 Cal.4th 793.)

For example, the court in *Kelly, supra,* 141 Cal.App.4th 910, held that an employee was not "dismissed" within the meaning of section 31725 when her employer "(1) advise[d] her it currently ha[d] no available position to accommodate her work restrictions imposed following her industrial injury; (2) place[d] the employee on unpaid industrial-injury leave, but (3) offere[d] the employee vocational rehabilitation (including a maintenance allowance) to train for another position." (*Id.* at p. 913.)

In *Mooney,* the court held the employee was not "dismissed" within the meaning of section 31725 where she was physically unable to perform the duties of the job because of permanent work restrictions. (*Mooney, supra,* 212 Cal.app.4th at p. 870.) The employee was on disability leave, and the employer continued to explore alternate employment for her (she rejected two offers as demotions). (*Ibid.*) The employee did not look for another job and did not file for or receive unemployment insurance benefits (thus supporting that she did not consider herself terminated). (*Ibid.*) The employer also engaged in an interactive process for her claim of disability discrimination. (*Id.* at p. 877.)

Simon's briefing shows she fails to understand the Legislature used different terminology in two statutes (sections 31721 [separation] and 31725 [dismissal]), and *Mooney* simply holds both statutes impose duties on the employer only when the employer's act of separating the employee from employment is permanent. "Such an

17

involuntary *separation* from employment, from the employee's perspective, is indistinguishable from a *dismissal* from employment." (*Mooney, supra,* 212 Cal.App.4th at p. 879, italics added.)

As stated by our Supreme Court, there is no case authority holding "an employer functionally or effectively terminates an employee by telling the employee to go out on sick leave until his or her medical condition abates sufficiently to enable return to the job." (*Stephens, supra,* 38 Cal.4th at p. 809.) Similarly, there is no need to file a retirement application for a worker temporarily placed on leave due to an injury but intends to return to work and the employer has held the job position vacant. Simon's evidence of a temporary separation from the workplace and the lack of pay does not describe the degree of separation needed to trigger an employer's duty of reinstatement under section 31725. (*Mooney, supra,* 212 Cal.App.4th at pp. 874-875; *Kelley, supra,* 141 Cal.App.4th at p. 924.)

Another reason Simon's argument fails is because she cites to and relies on appellate court decisions that preceded the Supreme Court's interpretation of section 31725 in *Stephens, supra,* 38 Cal.4th 793. (See, e.g., *Hanna v. Los Angeles County Sheriff's Dept.* (2002) 102 Cal.App.4th 887; *Tapia v. County of San Bernardino* (1994) 29 Cal.App.4th 375; *Phillips v. County of Fresno* (1990) 225 Cal.App.3d 1240; *McGriff v. County of Los Angeles* (1973) 33 Cal.App.3d 394.) The Supreme Court agreed with these cases to the extent they stood for the proposition that "a qualifying dismissal within the meaning of section 31725 need not be accompanied by any particular formality," but held that "some form of a termination is nevertheless required." (*Stephens, supra,* 38 Cal.4th at p. 806.) The *Mooney* opinion explained these pre-*Stephens* appellate court cases are distinguishable. Those courts did not "directly addressed the meaning of the word 'dismissed' in the context of section 31725 and the analyses in those cases assumed a dismissal, within the meaning of that statute, had been effected." (*Mooney, supra,* 212 Cal.App.4th at p. 877.) Simon's reliance on this stale case authority is misplaced.

18

D. *Leave to Amend*

"Generally, for a writ of mandate to issue, two basic requirements are essential, namely, a clear, present and usually ministerial duty on the part of the defendant and a clear, present and beneficial right in plaintiff to performance of that duty. [Citations.]" (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 507.) Here, Simon filed a writ of mandamus to compel the County to comply with the requirements of section 31725 by reinstating her to her employment and paying back wages and benefits. As stated above, we have concluded the trial court correctly determined Simon's FAP did not plead facts sufficient to demonstrate the County owes her this duty, triggered only when an employer "has dismissed the member for disability." (§ 31725.)

Simon asserts the court should have given her leave to amend her complaint because she had evidence proving she was separated from her employment. As stated, Simon has already proved there was a "separation," but it was temporary, and therefore, not the type of employer-driven and involuntary permanent termination of the employment relationship required to trigger the County's duties under section 31725. Simon's exhibits confirm she was on an unpaid leave of absence from her job and the County held her position for seven years. After the QMEs reported Simon was 100 percent disabled, the County appropriately complied with is ministerial duty of filing a disability retirement application. (§ 31721.) When OCERS denied the application due to insufficient evidence Simon was incapacitated, the County arranged meetings with Simon and discussed viable accommodations. Simon does not suggest what additional facts or information she could add to her petition to establish the County took additional action and, at some point, permanently severed the employment relationship. To the contrary, Simon discusses why her ability to return to *her job* has been delayed due to disputes about whether she must be cleared first with EMH and the County's failure to acknowledge necessary work restrictions. Simon does not suggest how she could plead around this admission. An employed person need not be reinstated to an existing job.

19

And finally, it should not be overlooked the trial court gave Simon leave to amend her initial petition.  Simon's vague suggestion there exists additional facts supporting a viable cause of action is insufficient to justify further leave to amend.  Simon had the burden of showing "'the trial court's denial of leave to amend was an abuse of discretion.'  [Citation.]"  (*Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411.)  She failed to do so.

DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MARKS, J.*

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20